221 So.2d 327 (1969)
NASSAU REALTY CO., Inc.
v.
CITY OF NEW ORLEANS and the Board of Zoning Adjustments, City of New Orleans.
No. 3421.
Court of Appeal of Louisiana, Fourth Circuit.
April 7, 1969.
Reuter, Reuter & Schott, Kenneth E. Pickering, New Orleans, for plaintiff-appellant.
Alvin J. Liska, Posey R. Bowers and Jackson P. McNeely, New Orleans, for defendants-appellees.
Before REGAN, CHASEZ and BARNETTE, JJ.
*328 BARNETTE, Judge.
The plaintiff brought suit seeking to overturn the decision of the Board of Zoning Adjustments of the City of New Orleans which denied its application for a building permit variation. From a judgment of the district court dismissing its suit, plaintiff has appealed.
Plaintiff, Nassau Realty Co., Inc., applied for and was granted a permit by the Department of Safety and Permits of the City of New Orleans to build a residence on a certain residential lot identified by municipal number 1708 Piety Street in the City of New Orleans. Shortly after beginning construction the permit was cancelled and a stop order directed to plaintiff to cease building on the lot for the alleged reason there was insufficient lot area. Plaintiff applied to the Board of Zoning Adjustments of the City of New Orleans seeking a permit variation from the requirements of the Comprehensive Zoning Ordinance of the City of New Orleans and an order directing the reinstatement of its building permit. Its application was denied by the Board whereupon plaintiff brought this suit seeking a judicial decree reversing the decision of the Board and ordering the issuance of the permit. Its petition was dismissed by the trial court and plaintiff appealed.
The lot in question is 31 feet wide by 103.34 feet in depth, fronting on Piety Street, and contains 3,205 square feet. It is zoned "B" Two Family Residential. Plaintiff purchased the lot together with an adjoining lot with residence, identified by municipal number 1706 Piety Street, with the alleged intent of selling 1706 Piety Street and building on the adjoining vacant lot.
Only two witnesses testified: Rene Brunet, plaintiff's president, and Norman F. Sauls, a real estate salesman who negotiated the sale to plaintiff. Neither of them testified with any certainty when the sale was consummated or when the permit allegedly granted was issued. No copy of the deed or the permit was filed in evidence.
Mr. Brunet testified that the building permit was received by him "approximately June 1st" (1967) and that construction was begun immediately. He said the stop order was received on or about June 16. When asked when he purchased the property he replied: "A month or two prior to the permit, in other words, it must have been around in April or May." The house and lot at 1706 Piety Street he said was sold "* * * in the latter part of May." When questioned by the court as to whether the permit was obtained before or after purchase of the lot, Mr. Brunet gave contradictory answers, saying, "I don't remember exactly, it was possibly before, I'm not sure." Then almost in the next breath, he said: "Afterwards, Your Honor."
Counsel for plaintiff has recited in his brief filed in this court a chronology of the significant events and has attached plaintiff's affidavit and certain purported copies of the building permit, purchase agreement, and deed. His argument of hardship and justification of a variance permit is largely based on the chronology of events related in counsel's brief and disclosed by the exhibits attached.
Plaintiff contends that it did not take title to the two lots until it had first obtained a permit from the Department of Safety and Permits to build a house according to the plan submitted on the vacant lot to be known as 1708 Piety Street, and that it would not have purchased the property without assurance that it could build the house as planned. The testimony of Brunet, as disclosed by the record before us, does not support its contention. Counsel for plaintiff has attempted to explain Mr. Brunet's inconsistent testimony by his affidavit and other exhibits attached to his brief in this court. We must disregard the affidavit and exhibits which are not properly in evidence and form no part of the record on appeal.
The plaintiff seeks reversal of the Board of Zoning Adjustments' refusal to grant *329 the variance on the basis of arbitrary and capricious action and that its refusal will cause substantial hardship. Much of plaintiff's argument in support of these contentions is based on the alleged facts disclosed by the exhibits which are not in evidence.
According to the testimony in the record before us, we find that the plaintiff applied for a permit to build on the vacant lot a house to be numbered 1708 Piety Street according to a plan submitted. A permit was issued by the Department of Safety and Permits. Plaintiff began construction and after the underground plumbing was set in place, footings dug, forms prepared and all necessary preparations completed to pour the concrete slab, a notice was served on plaintiff to stop construction for the reason that there was insufficient lot area and that an accessory building occupied 40 percent of the required rear yard area. Plaintiff had spent approximately $1,100 in the construction up to the date it was stopped.
The stop order was issued on or about June 16, 1967. On July 3, plaintiff filed a notice of appeal to the Board of Zoning Adjustments, and pursuant to its order filed on July 10, the application for variation from the requirements of the zoning ordinance. After notices were sent to interested parties and a hearing was held on July 20, the Board on July 25 officially denied the application. The Board found violation of the zoning requirements relative to lot area per family and that the accessory building, which had previously been used in connection with the house on lot 22 (1706 Piety Street), occupied 40 percent of the rear yard area. Previously the two lots (21 and 22), with the house at 1706 on lot 22 and the accessory building on lot 21, had been occupied and used as a single residence unit. The Board found the lot in question (21) contained an area of 3,205 square feet, whereas 4,400 square feet is prescribed for a one family home in the "`B' Two Family District." It found that variation would be in violation of the intent and purpose of the zoning ordinance. It further found "no hardship involved." The plaintiff then petitioned the district court for certiorari seeking reversal of the order of the Board.
The plaintiff offered evidence to prove that on two prior occasions it applied for and obtained variance permits to build two similar houses on other lots in the same neighborhood of insufficient area and for this reason argues that the Board is inconsistent, arbitrary, and capricious.
The trial judge in well-prepared "Reasons for Judgment" said in part as follows:
"In order to establish that the administrative tribunal was arbitrary and capricious and did grossly abuse its discretion, the plaintiff urges firstly, that the lot in question is a separate lot of record and that therefore, under Article XXVI, Section 2 of the Comprehensive Zoning Ordinance, plaintiff may use the lot for a single family dwelling purpose. Article XXVI, Section 2, provides:
"Where a lot has less area than the minimum requirements for the district within which the lot is located and was a lot of record in separate ownership from adjacent property at the time of the passage of this ordinance, that lot may be used only for single family dwelling purposes * *' (Emphasis added [by trial judge])
"Plaintiff has failed through any evidence to show that the subject lot was under separate ownership at the time of the passage of the Zoning Ordinance. To the contrary, the evidence adduced establishes clearly that the plaintiff acquired the subject lot together with an adjoining lot upon which there had been erected a residence.
"Secondly, plaintiff urges that the City had issued a permit to it and that plaintiff had reason to rely on that issuance, and further, that the Board of Zoning Adjustment is merely a board of review, and could only hear and determine appeals *330 from applicants who had been refused building permits.
"The evidence shows that a stop order was issued on June 16, 1968, which indicated that the permit had been issued in error and was accordingly vacated. The mere fact that a building permit was issued in error and contrary to the laws of the City does not vest an irrevocable right to proceed under that permit contrary to subsequent action cancelling the permission previous granted. The facts indicate that the plaintiff did accept the subsequent ruling of the permit department and did consider it a refusal and therefore appealed to the Zoning Board of Adjustment. The Court is further impressed with the fact that the plaintiff was thoroughly acquainted with the zoning regulations of that particular locality and had previously applied to the Board of Zoning Adjustments for approval of variances.
"Thirdly, plaintiff assigns as a reason for a reversal of the Board's ruling, that the Board had previously approved `other variations in this immediate area and on January 1, 1965, the Board in its resolution involving the property located at 1715 Piety Street directly across the street from the property in question, allowing a single family residence to be constructed on a lot which is actually smaller than the lot in question at 1708 Piety Street.'
"The Court did not have before it the various records of the hearings with reference to the other properties mentioned by plaintiff, nor is there any evidence before this Court that the identical situation existed in all respects as to the properties discussed by the plaintiff and the property herein involved. This Court will not substitute its judgment for that of the administrative tribunals in the absence of a showing by plaintiff that the administrative tribunal was arbitrary and capricious, or that it abused its discretion. Plaintiff has totally failed to establish any of the aforementioned elements.
"Finally, the plaintiff urges that the refusal by the Board of Zoning Adjustments would cause a substantial hardship on the plaintiff, and that it would remove the property out of commerce. In considering this question, we again refer to the testimony adduced at the trial. It must be recalled that plaintiff purchased the subject lot together with an adjoining lot upon which there was located a residence; that the lot upon which the residence was located was sold by plaintiff, leaving plaintiff only the vacant lot. Furthermore, the testimony shows that plaintiff had previously purchased two other non-contiguous lots in the immediate area only after application had been made to the Board of Zoning Adjustments for a variance due to the insufficient lot area on both of these lots. This application was made prior to the purchase of the lots. As to the subject lot, however, the purchase was made, the lot and home sold and the permit obtained on the vacant lot, all before the application was made to the Board of Zoning Adjustments for a variance. If a hardship was created, it would appear to the Court from the testimony adduced that it was one which was created by the plaintiff's own actions and that such actions were premeditated in order to present the argument of hardship to the administrative body as well as this Court."
We find no error in the conclusion reached by the trial court and its judgment will not be disturbed.
If plaintiff has sustained a loss and has been subjected to undue hardship through no fault of its own but as a result of the Director of the Department of Safety and Permits having erroneously issued a permit upon which it relied, it may have a just grievance against that Department. However, we express no opinion with respect to that aspect of the case. Whatever remedy it might have, however, does not lie in any action which will merely pass the hardship on to its neighbors whose *331 property would be reduced in value by the granting of the variance. Furthermore, the record does not indicate that plaintiff has exhausted all possible alternatives to avoid the alleged hardship. Reasons given for denial of the permit relate to the presence on the lot of an auxiliary building and the insufficiency of total area for the building proposed. The removal of the auxiliary building or reduction in the number of square feet of the proposed structure would seem to meet the objections raised. The record does not indicate that any such alternatives have been proposed.
For these reasons, the judgment appealed from is affirmed at appellant's cost.
Affirmed.