704 So.2d 909 (1997)
7004 ST. CHARLES AVENUE CORPORATION and Park View Cafe, Inc.
v.
The CITY OF NEW ORLEANS, Harriet Burnett, Director of The Department of Safety and Permits, and The Board of Zoning Adjustments.
No. 97-CA-0299.
Court of Appeal of Louisiana, Fourth Circuit.
December 10, 1997.
*910 Salvador Anzelmo, Michael J. Laughlin, New Orleans, for Appellants.
Lloyd N. Shields, Daniel Lund, III, Shields Mott Lund, L.L.P., New Orleans, for Appellees Newcomb Boulevard Association, et al.
Evelyn F. Pugh, Deputy City Attorney, Nolan P. Lambert, Chief of Civil Litigation, Avis Marie Russell, City Attorney, New Orleans, for Appellees The City of New Orleans and the Director of Safety and Permits.
Before SCHOTT, C.J., and BARRY and LOBRANO, JJ.
LOBRANO, Judge.
Appellants, 7004 St. Charles Avenue Corporation and Park View Cafe, Inc., are, respectively, the owner of the property known as the Parkview Guest House and the lessee of a portion of that property for the proposed purpose of operating a restaurant on the premises. They appeal the judgment of the trial court allowing defendant, the City of New Orleans and the Director of Safety and Permits, to revoke a permit which would have allowed the construction and operation of the restaurant. Upon our review of the record, we affirm.
The Parkview Guest House was built around the turn of the century. Since that time, it has varied in both use and structure; however, it has been housing itinerant guests for many years. Since 1984, the owners have paid so-called "hotel taxes" on the property.
In March 1994, the owners applied for a building permit to renovate the Guest House's kitchen to facilitate the construction of a restaurant on the property. In April 1994, the City's former Director of Safety and Permits issued a permit for those renovations. However, approximately a month later, May 24, 1994, the City's new Director of Safety and Permits revoked the permit. Upon review, she concluded that the property did not have legal nonconforming status for use as a "hotel" which status was necessary *911 for the accessory use of a restaurant. By her reasoning the Parkview Guest House more closely fit the definition of a "rooming house." She therefore revoked the permit.
The owners and lessees filed an appeal with the Board of Zoning Adjustment to overrule the action of the new director. The BZA upheld the new director's decision. Appellants then filed the petition in this case, requesting review of the BZA's decision, a declaratory judgment, and an injunction preventing the BZA or the new director from further interfering with the renovations allowed under the previous permit. The trial court dismissed the petition for permanent injunction and declaratory judgment, and from this judgment the owner and lessee appeal.[1]
In their first assignment of error, appellants claim the Director of Safety and Permits unlawfully revoked their building permit. They argue that the Director of Safety and Permits is not authorized to revoke a building permit after issuance merely on the basis of a change of opinion on a zoning determination. They rely on section 4-702(4) of the City Charter for the proposition that once a permit is issued by the Director of Safety and Permits, the Director has no authority to revoke or cancel it. That section, prior to the 1996 amendments, provided that the Director shall "[r]evoke, suspend, or cancel any permit which has been violated. Any revocation, suspension or cancellation shall be in writing and shall state the reasons therefor."[2] Thus say appellants, revocation by the Director for any reason other than violating the permit is illegal.
Appellees respond by pointing out that the Director's authority would be severely compromised if she cannot act to revoke a permit issued in error and argue that a contrary conclusion would give the Director no authority to review a permit after issuance, even if that issuance later proved to be erroneous.
Section 4-702(1) of the Home Rule Charter authorizes the director to "(a)dminister and enforce the zoning and building code ordinances ..." The Comprehensive Zoning Ordinance, Article 15, Section 1.3.5, holds the Department of Safety and Permits responsible "for the enforcement of any and all violations of the Zoning Ordinance" and states that the Department "may institute any appropriate action or proceeding to prevent such violations." These provisions grant the Director the ability to take all reasonable steps to prevent zoning violations; simple logic suggests that revocation of a permit issued in error is within the director's enforcement power.
Appellants' narrow interpretation of section 4-702(4) is unreasonable and contrary to the broad enforcement powers granted the Director. Simply, a permit issued erroneously, whether because of zoning, building code or other violations cannot gain legal status simply because it was issued in the first instance. If the director has the authority to issue a permit, it stands to reason that she has the authority to revoke it if erroneously issued.[3]
*912 We also find no merit in appellants' reliance on Dunn v. Parish of Jefferson, 242 So.2d 845 (La.App. 4th Cir.1971). The issue in that case was whether a plaintiff must exhaust administrative remedies prior to seeking a remedy in the courts for the attempted revocation of a building permit without a hearing by the Jefferson Parish Safety Director. Finding that no administrative remedy existed, we remanded to the trial court for a hearing on the request for a preliminary injunction. We reasoned that because the Jefferson Building Code did not provide for revocation as a means of enforcement, the code's administrative procedure was inapplicable.[4] We do not interpret that case as supporting the principle that the Director of Safety and Permits in Orleans Parish is without authority to revoke a permit issued in violation of the City's zoning laws. Indeed, there is contrary legal authority recognizing the Director's authority. See, Cross v. City of New Orleans, 446 So.2d 1253 (La.App. 4th Cir.1984); Pailet v. City of New Orleans, 433 So.2d 1091 (La.App. 4th Cir. 1983); Nassau Realty Co. v. City of New Orleans, 221 So.2d 327 (La.App. 4th Cir. 1969). And, the sequel to the Dunn case reaffirms our position in this case. In Dunn v. Parish of Jefferson, 256 So.2d 664 (La. App. 4th Cir.1972), writ denied 256 So.2d 382, we held that because the Planning Director of Jefferson Parish gave an erroneous reason for revoking the permit and because the permit was not issued in error in the first instance, its revocation was void.
Appellants next argue that the grounds upon which the permit was revoked are themselves in error; they assert that the Parkview Guest House is more accurately described as a "hotel," with all the legal nonconforming status that label grants, rather than as a "rooming house."
Appellants possess a hotel license, although this license is issued, not as a zoning classification, but for the purpose of collecting hotel tax. They argue that this license and their payment of hotel taxes is evidence of their status as a hotel. We disagree. The "hotel tax" is, in fact, paid in hotels, motels, rooming houses and boarding houses, which are all licensed as "hotels" for this purpose only. Code of the City of New Orleans, Ord. No. 828 M.C.S., Section 70-18. This classification for taxing purposes has no bearing on zoning classifications, which is the issue here.
The Comprehensive Zoning Ordinance does not define a "guest house." It does, however, provide definitions to differentiate between a "rooming house" and a "hotel." A hotel is described as a building with 15 or more individual sleeping rooms or suites, each with a private attached bath, which are rented out to the general public for compensation. An inside lobby, supervised at all times, is to be the route through which guests enter and leave the hotel. The ordinance provides that a hotel may have all the customary accessories, such as a bar or restaurant. A rooming house is defined as a building with less than fifteen sleeping rooms, generally without attached private bathrooms or kitchens. No lobby is required. While some dining facilities may be on site, rooming houses are not allowed to build a restaurant or bar that would serve the general public.
The Parkview Guest House has 22 sleeping rooms, 15 of which have connected private baths. There is some factual dispute as to whether or not it has a lobby. Regardless, it is clear that the Parkview Guest House does not fit the definition of either a hotel or a rooming house; with 22 rooms, it is larger than rooming houses are generally supposed to be, and with communal baths shared by several of the rooms, it lacks the private bath requirement of a hotel.
Appellants argue that the Parkview Guest House can be construed to fulfill all the characteristics of a hotel  it does have fifteen rooms with private bathrooms, which they assert has been found adequate for the attached bath requirement in the past.[5] Appellees *913 admit that the Parkview Guest House has some of the characteristics of a hotel, but deny that it shares all those characteristics, and argue that the Parkview is more like a rooming house. We agree.
The Comprehensive Zoning Ordinance first describes a rooming house as a "building other than an apartment hotel, hotel, small and large group house, residential care center, dormitory, motel or motor lodge, or tourist home ..." Thus, the category of a rooming house is obviously meant to take in those small structures which do not fall precisely into one of the other categories. Although the BZA was not required to determine the Parkview's status, it generally agreed that rooming house, and not hotel, was the most reasonable category. Thus, it affirmed the permit revocation by the Director.
A nonconforming use should be viewed narrowly and all doubts resolved against expansion of the nonconformity. Redfearn v. Creppel, supra at 1359. We simply cannot say that the BZA's determination that Parkview does not enjoy nonconforming use as a hotel is wrong. That finding is reasonable, in accord with the City's zoning laws, and is not an abuse of the discretion afforded the BZA. La. R.S. 33:4721.
Finally, appellants argue that the BZA is unlawfully constituted thereby rendering constitutionally defective its finding with respect to the Parkview. At the time the permit was revoked the BZA was comprised of five members, as provided by the City Charter.[6] However, the BZA is under the constitutional authority of the legislature, and the legislature provided, in La. R.S. 33:4727(B)(1), that the BZA for the Parish of Orleans should consist of seven members. Appellants argue that this discrepancy between the city's charter and the legislature's prescribed parameters renders the BZA illegally constituted, and that any action taken by the BZA is therefore illegal.
Appellants' argument is broad in scope. This court is unwilling to render invalid all decisions of the BZA prior to 1996 because of this one, now-remedied discrepancy especially where appellant has failed to show how a five, rather than a seven, member BZA prejudiced his position.[7] We therefore decline to address the issue of whether the provisions of the City Charter or R.S. 33:4727 should prevail. See, City of New Orleans v. Board of Commissioners of the Orleans Levee District, 640 So.2d 237 (La.1994).
For the foregoing reasons, the trial court judgment is affirmed.
AFFIRMED.
NOTES
[1] The trial court's initial judgment rendered December 11, 1995, rejected the request for a preliminary injunction and affirmed the decision of the BZA. The judgment before us was rendered on December 9, 1996. It rejected the request for a permanent injunction and declaratory relief. The intervenors in this matter have filed an exception of res judicata arguing that the December 5, 1995 judgment was not appealed and thus is res judicata with respect to the December 9, 1996 judgment. In particular, they argue that the BZA's decision cannot be considered in this appeal because the 1995 judgment is final in that respect. Because of the result we reach in this case, it is not necessary that we address the merits of that argument.
[2] The 1996 amendment provides that the Director shall revoke a permit "which has been issued in violation of the zoning or building code ordinances or other applicable state of municipal law."
[3] Appellants also argue due process, vested property rights and ex post facto laws in support of their position. However, they have been afforded due process before the BZA, the district court and this court. And, because the permit was revoked shortly after it was issued, there is no evidence to substantiate a vested rights argument. In any event, appellants' remedy in that situation would be monetary damages. See, Dunn v. Parish of Jefferson, 256 So.2d 664 (La. App. 4th Cir.1972), writ denied 256 So.2d 382. Finally, no subsequent law was adopted which caused the permit revocation. It was revoked by the Director.
[4] Appellants argue that in Dunn the plaintiff's permit was revoked without notice or opportunity to be heard and thus is analogous to their situation. However, appellants were afforded every opportunity to convince the BZA that its non-conforming status was that of a hotel. For the reasons discussed infra, they failed.
[5] Appellants refer to Redfearn v. Creppel, 455 So.2d 1356 (La.1984) wherein the Columns Hotel was recognized as having nonconforming status as a hotel even though all of the rooms did not have a connecting bath. However, the issue in that case was not whether the Columns enjoyed the nonconforming use status of a hotel, but whether the accessory uses of a cocktail lounge and expanded meeting rooms were unauthorized expansions for that nonconforming use. The "Hotel" nonconforming status was not at issue.
[6] Since January 1, 1996, the BZA has had seven members. The charter was amended to provide for seven members. However, at the time of these proceedings, it provided for five.
[7] All five members of the BZA agreed to uphold the Director's action. Thus, even with a seven member board, appellants would lack a majority.