EDWIN A. LOMBARD, Judge.
 

 1 ,This appeal is from a preliminary injunction enjoining construction on property in the East New Orleans Renaissance Corridor owned by defendants Levy Gardens Partners 2008, LLC, Levy Gardens Partners, LLC, and Levy Gardens Partner, LP
 

 [1]
 

 ,
 
 until completion of the conditional use permit process and consent by the New Orleans City Council. After review of the record in light of the applicable law and arguments of the parties, we find no error in the judgment of the trial court.
 

 Relevant Facts and Procedural History
 

 The plaintiffiappellee, Eastern New Orleans Neighborhood Advisory Commission (“ENONAC”), is an advisory commission created by the state legislature in July 2008 to represent the interests of the individual homeowners in New Orleans East in preserving the property values of residential neighborhoods and the character and integrity of their community. The appellants are developers planning to construct a multi-family housing project consisting of twelve apartment buildings on property located in the vicinity of Bullard Avenue between ^Interstate 10 and Lake Forest Boulevard. A portion of the proposed construction site requires a conditional use permit for construction of a multi-family residence. Specifically, the property at issue (Lot L) originally was divided into two lots, Lot 3A-6-1A-2C (“Lot 2C”) and 3A-6-1A-1 (“Lot 1”), zoned, respectively, RO for General Office and B-2 for General Business District development. Whereas property classified as RO is zoned to allow multi-family housing as a permitted use, property classified as B-2 is zoned to allow multi-family housing only as a conditional use and, thus, requires an additional process to determine if a building permit will issue.
 

 In October 2007, an amendment to the 1995 City Zoning Ordinance (“CZO”) required that multi-family housing in nonresidential zoning districts within the area encompassed by the Eastern New Orleans Renaissance Corridor (“ENORC”) required a “conditional use” permit. In December 2008, the ENORC, which initially included properties bordering Chef Ment-eur Highway in the vicinity of the intersection of Bullard Avenue and Interstate 10, was amended and, as a result, incorporated a portion of appellant developers’ property. Thus, in December 2008, a portion of the appellant developers’ proposed construction site became burdened with additional zoning regulations, including conditional use requirements.
 

 In November 2007, the appellant developers applied for four permits to begin construction of four of the twelve planned apartment buildings. Pursuant to the application, the appellant developers sought to build the four buildings at a single address,12200 Levy Drive. The permits were issued in February 2008 but the appellant developers did not begin construction. Accordingly, in July 2008 the appellant developers requested a 180 day extension of the building permits. In |sAugust 2008, the extension request was granted and the appellant developers began work in October 2008.
 

 
 *1134
 
 In September 2008, the appellant developers applied for permits for an additional eight buildings, again using the 12200 Levy Drive as the sole address. ENO-NAC filed a petition for injunctive relief and, after reviewing relevant statutory zoning provisions, the trial judge concluded that the portion of the project to be built on the B-2 zoned area of the appellant developers’ property must undergo the conditional use permit process.
 
 [2]
 
 Accordingly, on November 12, 2008, the trial court issued a stop-work order, along with a writ of mandamus directing the Safety and Permits Department to suspend all permits issued for this project until a determination was made as to which permits and permit applications corresponded to portions of the appellant developers’ property wherein multi-family housing was zoned as a permitted use (RO) and which permits and permit applications corresponded to portions of the appellant developers property wherein multi-family housing was zoned as a conditional use subject to the conditional use process.
 

 The City filed a Satisfaction of Judgment, supported in part by the affidavit of the Director of the Department of Safety and Permits stating that all of the permits applied for by the appellant developers pertained only to the portion of the appellant developers’ property zoned RO which allowed multi-family housing as a permitted use. Accordingly, on November 24, 2008, the trial court lifted the injunction and the Department of Safety and Permits re-issued the four initial |4permits and, after completion of the thirty day notice period, the remaining eight permits were issued on December 28, 2008.
 

 Meanwhile, however, on December 11, 2008, an ordinance amending the ENORC Overlay District (and burdening a portion of the appellant developers’ property with additional zoning regulations) became effective. Subsequently, on January 22, 2009, ENONAC, joined by the City Council of the City of New Orleans, filed the petition for injunctive relief underlying this appeal. After reviewing the zoning history of the property at issue in light of the pertinent statutes, the trial court issued a preliminary injunction on February 9, 2009, requiring the appellant developers to complete the requisite conditional use permit process
 
 [3]
 
 before proceeding with the construction of multi-family housing.
 

 Discussion
 

 On appeal, the appellant developers argue that the plaintiffs failed to prove any of the prerequisites for a preliminary injunction and that the trial judge erred in failing to find that (1) a vested right to complete the entire unified development was acquired by the appellant developers regardless of applicable zoning ordinances; (2) recodification of the CZO did not supersede the zoning regulations set forth in the Ordinance No. 10733 of 1985; (3) the appellant developers should not be penalized because of the City’s erroneous zoning determinations; and (4) the 2008 Ordinance does not apply to this project because the City Council failed to comply with the
 
 *1135
 
 thirty-day notice requirement of Act 887 of 2008.
 

 | ¿This court reviews the trial court’s granting of a preliminary injunction only to determine (1) if the trial court committed an error of law or (2) if granting the injunction was manifestly erroneous or clearly wrong.
 
 Yokum v. Court of Two Sisters,
 
 2006-0732, p. 3 (La.App. 4 Cir. 11/21/06), 946 So.2d 671, 673. Pursuant to La.Code Civ. Proc. art. 3609, an injunction is issued “where irreparable injury, loss, or damage may otherwise result to the applicant....” La.Code Civ. Proc. art. 3609. Irreparable harm means that money damages cannot adequately compensate for the injuries suffered and that “injuries cannot be measured by pecuniary standards.”
 
 Historic Restoration, Inc. v. RSUI Indemnity Co.,
 
 2006-1178, p. 11 (La.App. 4 Cir. 3/21/07), 955 So.2d 200, 208 (citation and internal quotation marks omitted). When contemplating whether a preliminary injunction should issue, trial judges have great latitude of discretion in choosing whether to grant or deny the relief requested and the petitioner bears a lower burden of proof than what is necessary for a permanent injunction.
 
 Burnham Broadcasting Company v. Williams,
 
 629 So.2d 1335 (La.App. 4 Cir.1993);
 
 see also Historic Restoration,
 
 at p. 11, 955 So.2d at 208 (the standard of proof required for a preliminary injunction is less than that required for a permanent injunction”). Accordingly, “a preliminary injunction may be issued on merely a
 
 prima facie
 
 showing by the plaintiff that he is entitled to relief.”
 
 Mary Moe, LLC v. Louisiana Board of Ethics,
 
 2003-2220 (La.4/14/04), 875 So.2d 22;
 
 see also
 
 La. Code Civ. Proc. art. 3609) (court may hear application for preliminary injunction upon the verified pleadings or supporting affidavits).
 

 A review of the legislative history pertaining to Lot L from 1985 through 2008 clearly indicates that the City Council of New Orleans has consistently required completion of the conditional use application process before the | ¿fabrication of multiple-family dwellings could occur on the lot. Specifically, in 1985, the property in dispute was a part of Lot 3A-6, Section 26, LaKratt Tract. Subsequent changes in the classification and zoning schemes partitioned the land into Lot 2C and Lot 1. In 2008, the property was re-subdivided and Lot 2C and Lot 1 were merged into a single unified Lot L.
 

 In 1985, Ordinance 10733 amended the Comprehensive Zoning Ordinance (“CZO”), reclassifying a portion of the LaKratt Tract “RM-2, Multiple Family Residential District” to “RO, General Office District” with a specific provision expressly prohibiting any use of the land as housing for three or more families. In addition, the ordinance provided that (1) “conditional uses permitted shall be the same as the conditional uses permitted under the applicable zoning district regulations;” (2) “The applicability of the foregoing provisos to any portion of the property subject thereto shall automatically cease and terminate upon the passage of any Urban Corridor District Ordinance or similar ordinance affecting the said property;” and (3) “Any subsequent zoning ordinance that conflicts with any proviso contained herein shall automatically repeal and/or supersede such proviso.” Ordinance 10733 (1985), Proviso II, X.
 

 In August 1986, the Bullard Avenue Urban Corridor District, encompassing a portion of the LaKratt Tract, was created by the Ordinance 11310. Thus, concomitantly, the zoning regulations applicable to an urban corridor applied to a portion of the LaKratt Tract at issue in this matter.
 
 *1136
 
 This corridor subsequently became the ENORC district.
 

 The preamble of the CZO of 1995 specifically states that previous zoning ordinances are reordained or amended by the new provisions and that “the zoning 17regulations adopted by this ordinance shall supersede any zoning regulations in effect prior hereto ...” Article 1 § 11 of the CZO of 1995 provides in pertinent part: “Whenever these regulations contain an actual, implied, or apparent conflict, the more restrictive regulation shall apply unless specified otherwise.”
 

 Accordingly, based on the zoning history of Lot L, the plaintiffs made the requisite
 
 prima facie
 
 showing necessary for a preliminary injunction to halt construction until completion of the conditional use permit process. There is no merit in the appellant developers’ arguments that the trial court erred in failing to make findings of fact in their favor.
 

 The appellant developers contend that the provision of the Preamble to the CZO of 1995 which states “shall supersede any zoning regulations in effect prior hereto ...” is dispositive. However, as noted by the trial judge, Section 1 of the CZO of 1995 specifically provides that the previous CZO of 1970, was “amended, reordained” and “to be read as annexed” [into the CZO of 1995 as] Attachment No. 1. “Amend” means to “to change or modify for the better; to alter formally by modification, deletion or addition,”
 
 Webster’s New Universal Unabridged Dictionary
 
 1012, 1195 (1992), and, accordingly, amending can take place by modification, deletion or addition. However, ordain means to “to establish or order by appointment, decree, or law: enact,” the prefix “re-” means “again,” and, accordingly, “reordain” means to enact again.
 
 See Webster’s New Universal Unabnidged Dictionary
 
 1012, 1195 (1992). Therefore, because the CZO of 1995 expressly annexes the CZO of 1970 (and therefore annexes the amendments to the CZO of 1970, including the pertinent 1985 ordinance), its adoption alone cannot be construed as deleting all previous versions of the CZO. Thus, the amended versions of both the CZO of 1970 and the CZO of 1995 are relevant and applicable |suntil or unless specifically superseded by enactments of the New Orleans City Council.
 
 See State v. Randall,
 
 219 La. 578, 53 So.2d 689, 691 (La.1951) (“where a statute is ambiguous and susceptible to two constructions, the courts will give that construction which best comports with the principles of reason, justice, and convenience, for it is presumed that the Legislature intended such exceptions to its language as would avoid its leading to injustice, oppression or absurd consequences.”). Accordingly, we find no merit in the appellant developers’ contention that the trial judge erred in failing to find that CZO of 1995 superseded all previously enacted zoning regulations.
 

 We also find no merit in appellant developers’ argument that the trial court erred in not finding that it had a vested right in continuing construction of its development. The authority to enact zoning regulations is a legislative function that derives from the State’s police power.
 
 Palermo Land Co., Inc. v. Planning Comm’n of Calcasieu Parish,
 
 561 So.2d 482, 491 (La.1990). As such, real property is subject to this police power and the City Council may validly pass an ordinance “... after the making of such application which would prohibit the issuance of the permit.”
 
 Id.
 
 at 488. Vested rights do not simply accrue “because a person applies for a permit at a time when it might be lawfully granted.”
 
 Id.
 
 Accordingly, “[t]he only zoning cases in which vested rights are properly an issue are those in which
 
 *1137
 
 the opponent of the ordinance has obtained a building permit, has begun construction, and has become liable for work and materials.”
 
 Id.
 
 at 487 n. 4 (citing
 
 Dunn v. Parish of Jefferson,
 
 256 So.2d 664, 667 (La.App. 4 Cir. 01/10/72),
 
 writ refused,
 
 260 La. 1137, 258 So.2d 382 (1972) (holding that a lawfully issued building permit cannot be revoked because the council waffled in its decision after the permit was properly granted and issuance did not occur as a 19result of an error in fact or law.) In this case, building permits were issued to the appellant developers due to a misinterpretation of the zoning regulations but, while frustrating, that alone is insufficient to create a vested right.
 
 See 7004 St. Charles Ave. Corp. v. City of New Orleans,
 
 97-0299 (La.App. 4 Cir. 12/10/97); 704 So.2d 909,
 
 writ denied,
 
 (La.03/13/98), 712 So.2d 881 (permits issued erroneously do not grant vested rights to the recipient and therefore may be legitimately revoked).
 
 See also Nassau Realty Co. v. City of New Orleans,
 
 221 So.2d 327, 330 (La.App. 4th Cir.04/07/69) (erroneously issued building permit does not confer vested rights to continue inappropriate use);
 
 Cross v. City of New Orleans,
 
 446 So.2d 1253 (La.App. 4 Cir. 02/09/84),
 
 writ denied,
 
 449 So.2d 1359 (La. 1984) (the Board of Zoning Adjustments’ revocation of an erroneously granted permit to operate a youth hostel, after the owner expended considerable money to convert the building for such use, was not abuse of discretion because the facility lacked the required number of off-street parking spaces).
 

 Conclusion
 

 Challenges to zoning determinations are first subject to the review by local zoning boards.
 
 See Nassau,
 
 221 So.2d at 330 (stating that the district court “will not substitute its judgment for that of the administrative tribunals in the absence of a showing by [the defendant] that the administrative tribunal was arbitrary and capricious, or that it abused its discretion.”). To the extent that the appellant developers seek to circumvent that process, the issue of whether the appellant developers can go forward with their project as planned is not properly before us. Further, the trial court judgment makes no dispositive ruling as to future construction but, rather, merely requires the appellant developers to complete the required permit process before proceeding with construction. Thus, under the | lftcircumstances of this case, we cannot find that the trial judge committed an error of law or was manifestly erroneous in issuing a preliminary injunction until the appellant developers complete the appropriate administrative process. Accordingly, the judgment of the trial court is affirmed.
 

 AFFIRMED.
 

 [1]
 

 . The appellant developers, although separate legal entities, appear to operate as a single entity for purposes of the matter at issue,
 

 [2]
 

 . Per Article 16 § 6.1 of the 1995 CZO, ‘Tal conditional use is a land use which ... is compatible with the permitted land uses in a given zoning district only upon a determination that the external effects of the use in relation to the existing and planned uses of adjoining property and the neighborhood can be mitigated through imposition of standards and conditions.”
 

 [3]
 

 . In conformity with Article 16 § 6.4 of the 1995 CZO, public hearings are an integral component of the conditional use application process. Thus by filing an application for conditional use permits, the appellant developers' proposed development would be open to public scrutiny.