MADELEINE M. LANDRIEU, Judge.
LThe plaintiff, Moreteo, Inc., appeals the trial court’s denial of it petition for preliminary injunction. For the reasons that follow, we affirm.
FACTS AND PROCEEDINGS BELOW
In June of 2008, Moreteo, a Nevada corporation, entered into an agreement to purchase a thirty-five acre tract of land located in Plaquemines Parish with the intention of developing the property into a shopping center anchored by a grocery or department store. Subsequently, Moreteo entered into negotiations with Walmart *289 and now intends Walmart to be the anchor store.
On April 22, 2010, in anticipation of developing a Master Plan for Plaquemines Parish, the Parish Council adopted Ordinance 10-109 [hereinafter referred to as “the first moratorium ordinance”], which provided a moratorium until the end of the calendar year on the issuance by any parish department or agency of permits for any building activity or work that exceeded thirty thousand dollars in cost without special permission of the Council. The ordinance also provided that the Council could consider releasing from the moratorium any qualified permit applicant who presented sufficient evidence that the following conditions had been met to the satisfaction of the Council:
(a) Zoning compliance
(b) Planning compliance
(c) Traffic impact studies
(d) Impact fees for any improvements to public access roads
|4(e) Impact fees for water and/or sewerage
(f) Impact fees for drainage
(g) Engineering considerations
(h) Such other reasonable issues before the Council
Prior to the Council’s adoption of the first moratorium ordinance, Moreteo participated in several meetings with various parish officials concerning Moretco’s planned shopping center development, which was to be located the district represented by Councilman Keith Hinkley. During these meetings, the officials voiced certain concerns about the plans but seemed to have a favorable attitude toward the project. Moreteo agreed to make changes to address these concerns. However, Moreteo did not apply for a building permit either before or during the period of time the first moratorium was in effect. That moratorium expired on December 31, 2010.
On January 10, 2011, Moreteo filed an application for a building and construction permit for a “Commercial development to include Wal-Mart, Retail, Business and Restaurant uses.”[1] On January 27, 2011, the Council adopted Ordinance 11-13 [“the second moratorium ordinance”], which established a new moratorium that would expire on December 31, 2011, or upon the completion of a Master Plan for the parish. Ordinance 11-13 provided that the second moratorium 15“shall be deemed effective as of January 1, 2011.”[2] The provisions of the second moratorium ordinance were virtually identical to those of the first, except that “Fire, EMS and police response time impacts” was added to the list of conditions for which at a permit applicant had to present evidence in order to be considered for exemption from the moratorium. On March 10, 2011, the Council adopted Ordinance 11-49 [hereinafter referred to as “the zoning amendment ordinance”], which amended the Comprehensive Zoning Ordinance to provide that no retail establishment with a floor area in excess of 25,000 square feet would be permitted in *290 certain districts[3] “except as a Planned Unit Development subject to the requisite site plan review process of the Plaque-mines Parish Planning Development Board and final approval by the Plaquemines Parish Council.”
In April of 2011, Moreteo filed this action against Plaquemines Parish, the Plaquemines Parish Council and its members, and Plaquemines Parish President William “Billy” Nungesser [hereinafter collectively referred to as “the Council”] seeking injunctive and declaratory relief to prohibit the application of the second moratorium ordinance and the zoning amendment ordinance to Moretco’s planned shopping center development. Moretco’s request for a preliminary injunction was tried on January 4-6, 2012. On February 22, 2012, the trial court rendered judgment with written reasons denying the preliminary injunction. Moreteo appeals that judgment.
ISSUES
| ^Moreteo contends that the trial court erred by declining to grant a preliminary injunction for the following reasons:
(1) The ordinances are unconstitutionally vague;
(2) The retroactive application of the ordinances to Moretco’s permit application would violate Moretco’s constitutional rights; and
(3) The passage of the ordinances was an arbitrary and capricious abuse of the Council’s power motivated by Councilman Hinkley’s racial bias.
APPLICABLE LAW
A preliminary injunction is an interlocutory procedural device designed to preserve the status quo as it exists between the parties pending trial on the merits. Sessions, Fishman & Nathan, L.L.P. v. Salas, 2004-1790 (La.App. 4 Cir. 5/25/05), 905 So.2d 373, 377. To prevail in the trial court on a petition for preliminary injunction, the petitioner is required to establish by prima facie evidence that: (1) it will suffer irreparable injury, loss, or damage if the injunction is not issued; (2) it is entitled to the relief sought; and (3) it will likely prevail on the merits of the case. Limousine Livery, Ltd. v. A Airport Limousine Serv., L.L.C., 2007-1379 (La.App. 4 Cir. 3/12/08), 980 So.2d 780, 783. A showing of irreparable injury is not required in cases where the conduct sought to be restrained is unlawful, such as when the conduct constitutes a direct violation of a prohibitory law. Asaro v. City of New Orleans, 2010-0572, p. 3 (La.App. 4 Cir. 12/22/10), 54 So.3d 1214, 1217, writ denied, 2011-0353 (La.4/1/11), 60 So.3d 1257. When deciding whether a preliminary injunction should issue, trial judges have great latitude of discretion in |7choosing whether to grant or deny the relief requested. E. New Orleans Neighborhood Advisory Comm’n v. Levy Gardens Partners 2008, LLC, 2009-0326, p. 5 (La.App. 4 Cir. 7/15/09), 20 So.3d 1131, 1135.
An appeal may be taken as a matter of right from an order or judgment relating to a preliminary injunction. La. C.C.P. art. 3612; Ellis Const., Inc. v. Vieux Carre Resort Properties, L.L.C., 2005-1109 (La.App. 4 Cir. 6/7/06), 934 So.2d 206, 209. The appellate court should not overturn the denial or dissolution of a preliminary injunction absent a clear abuse of the tidal court’s great discretion. FQCPRQ v. Brandon Investments, L.L.C., 2005-0793 (La.App. 4 Cir. 3/29/06), 930 So.2d 107, 109.
*291 DISCUSSION
Moreteo argues that the trial court abused its discretion by declining to grant a preliminary injunction prohibiting the Council from applying the second moratorium ordinance and the zoning amendment ordinance to Moretco’s permit application. Moreteo admits that it has not sought the Council’s approval for its development as would be required under the provisions of each of those ordinances before any permits could be issued. Because neither ordinance has yet been applied to Moreteo, in order to show its entitlement to a preliminary injunction, Moreteo had to demonstrate in the trial court that each ordinance was invalid on its face. Moreteo thus contended in the trial court that the ordinances are unconstitutionally vague; that applying these ordinances retroactively to Moretco’s previously-filed permit application would unconstitutionally deprive Moreteo of |8vested rights; and that the passage of these ordinances was an abuse of the Council’s power unfairly targeting the Moreteo project. Moreteo did not argue that the trial court’s failure to grant the preliminary injunction would result in irreparable harm, but that an exception to the irreparable harm requirement applies here because the conduct sought to be restrained is unlawful.
In its Reasons for Judgment, the trial court found that Moreteo failed to show that it was entitled to the injunction or that it would likely prevail on the merits. On appeal, Moreteo seeks reversal of this judgment by reiterating the same arguments it made in the trial court as to the invalidity of the ordinances.

I. Vagueness

Citing McCauley v. Albert E. Briede & Son, 231 La. 36, 90 So.2d 78 (1956), Moreteo argues that the ordinances are vague because they fail to establish any rule or standard to guide the officials charged with their administration and therefore leave their interpretation, administration and enforcement to the “unbridled discretion” of the governing authority. McCauley involved a “variance” or “special use” provision of a city zoning ordinance that gave the city council the right, by special permit, to authorize the location of a mortuary in any district where one would otherwise be prohibited. The ordinances presented here are clearly different from the provision invalidated in McCau-ley. The second moratorium ordinance passed by the Parish Council in this case requires that certain information, such as “traffic impact studies” and “Fire, EMS, and police response time impacts” be submitted and considered by the Council in making its decision. The zoning amendment ordinance requires that a retail establishment | Jarger than 25,000 square feet be submitted as a Planned Unit Development and subjected to the site plan review process of the Plaquemines Parish Planning Development Board before being considered for approval by the Council. Unlike the provision in McCauley, which provided no standard or guide, these ordinances include requirements and guidelines to aid the Council in its decision-making. However, Moreteo argues that these requirements are not well-defined or sufficiently specific.
The Louisiana Supreme Court has stated:
A law is fatally vague and offends due process when a person of ordinary intelligence does not have a reasonable opportunity to know what is prohibited so that he may act accordingly or if the law does not provide a standard to prevent arbitrary and discriminatory application. Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 497-99, 102 S.Ct. 1186, 1193, 71 L.Ed.2d *292 362 (1982). Laws regulating businesses are held to a lesser standard of “definiteness” than statutes imposing criminal penalties. Carlin Communications, Inc. v. South Central Bell Telephone Co., 461 So.2d 1208, 1214 (La.App. 4th Cir.1984).
Economic regulation is subject to a less strict vagueness test because its subject matter is often more narrow, and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action. Indeed, the regulated enterprise may have the ability to clarify the meaning of the regulation by its own inquiry, or by resort to an administrative process.
Med Exp. Ambulance Serv., Inc. v. Evangeline Parish Police Jury, 96-0543 (La.11/25/96), 684 So.2d 359, 367 (quoting Village of Hoffman Estates, 455 U.S. at 498-99, 102 S.Ct. at 1193-94, 71 L.Ed.2d 362) (Emphasis supplied). Therefore, to successfully challenge an ordinance as vague, “the opponent of the ordinance must prove that the ordinance is vague ‘not in the sense that it requires a person to conform ... to an imprecise but comprehensible normative standard, but rather in the sense that no standard conduct is specified at all.’ ” Id., p. 11, 684 So.2d at 367 (quoting Village of Hoffman Estates, supra, 455 U.S. at 497, n. 7, 102 S.Ct. at 1191, n. 7).
As the trial court noted in its Reasons for Judgment, Moreteo had the opportunity to submit to the administrative process by presenting its project to the Council for a final decision, but Moreteo chose not to do so. Thomas McAlister, the vice-president and corporate representative of Mor-eteo, testified before the trial court that Moreteo never asked the Council to clarify or interpret the requirements of the ordinances, and that he decided not to seek the Council’s approval for the project because he believed to do so would have been futile. According to the trial court, because Moreteo failed to exhaust its administrative remedies, Moreteo “was not in a position” to challenge the ordinances as being vague. Essentially, the trial court found Moretco’s action to be premature.
Regardless of whether Moretco’s action is premature, however, we agree with the trial court that Moreteo failed to meet its burden of showing that these ordinances are impermissibly vague. To do so Moret-eo would have to show that the challenged ordinances lack any standard to guide the Council so that any decisions made would be completely arbitrary. A plain reading of the ordinances themselves refutes Mor-etco’s contention. The trial court did not abuse its discretion by declining to enjoin the application of the ordinances on account of vagueness.

II. Retroactivity

Moreteo next argues that applying the ordinances retroactively to its previously-filed permit application would violate Moretco’s constitutional right to due process. It is undisputed that Moretco’s permit application regarding this property was filed prior to the Council’s passage of the second moratorium |n ordinance and the zoning amendment ordinance. It is also undisputed that Moretco’s permit application had not been acted upon and was pending at the time these ordinances were adopted. At trial, Jeffrey Moore, the CEO of Moreteo, testified that Moreteo has spent approximately one million dollars to date developing its proposed shopping center and has obligated itself to buy the property in question. Moreteo representatives also testified that they had participated in several meetings with various parish officials concerning the project and had *293 been encouraged by the progress made. The trial court did not discredit this testimony. However, it found these facts to be irrelevant to the legal issue presented here, which is whether filing an application for a permit gives the applicant a vested property right of which he may not be deprived without due process of law.
Louisiana courts have clearly resolved this issue by holding that applying for a permit does not afford the applicant any vested rights. In the landmark case of Palermo Land Co., Inc. v. Planning Comm’n of Calcasieu Parish, the Louisiana Supreme Court stated:
Everyone holds his property subject to the police power. Because a person applies for a permit at a time when it might be lawfully granted does not give him a vested right to the permit. An ordinance may be validly passed after the making of such application which would prohibit the issuance of the permit.
Id., 561 So.2d 482, 488 (La.1990) (quoting State ex rel. Manhein v. Harrison, 164 La. 564, 114 So. 159, 163 (1927)). As this court has recently reiterated:
Vested rights do not simply accrue “because a person applies for a permit at a time when it might be lawfully granted.” Id.Id. [Palermo, supra, at 488] Accordingly, “[t]he only zoning cases in which vested rights are properly an issue are those in which the opponent of the ordinance has obtained a building permit, has begun construction, and has become liable for work and materials.” Id. at 487 n. 4 (citing Dunn v. Parish of Jefferson, 256 So.2d 664, 667 (La.App. 4 Cir. 01/10/72), writ refused, 260 La. 1137, 258 So.2d 382 (1972)).
E. New Orleans Neighborhood Advisory Comm’n v. Levy Gardens Partners 2008, LLC, supra, p. 8, 20 So.3d at 1136-37.
As it did in the trial court, Moretco cites Asaro v. City of New Orleans, 2010-0572 (La.App. 4 Cir. 12/22/10), 54 So.3d 1214, in support of its argument that the ordinances may not be applied retroactively. Like the trial court, we find Moretco’s reliance upon this case to be misplaced.
In Asaro, this court made the following statement, upon which Moreteo relies:
AHEPA argues that because its permit application was made prior to the date that this motion was passed, the moratorium does not apply in this case. We agree.
Id., p. 9, 54 So.3d at 1220, writ denied, 2011-0353 (La.4/1/11), 60 So.3d 1257. Taken out of context, this statement appears to support Moretco’s argument. However, this statement does not represent the holding of the case. In Asaro, the permit application to which the court refers was not only filed, but also granted and the permit issued, before the enactment of the moratorium. The issues in Asaro were: (1) whether the building. permit had expired before the moratorium was enacted; and (2) if not, whether revised building plans submitted by the contractor after the permit was issued but before the moratorium was enacted constituted a new permit application, which would be subject to the moratorium.[4] This court found that the original permit had not expired, and the revised plans did not constitute an application for a new permit. Therefore, this court held:
The uncontroverted testimony of the Director of Safety and Permits established that the submission of plan revisions on *294 May 19, 2009 didj^not constitute a new permit application. The same permit number was used for the plan modification review. Because the submission of plan revisions for review was not an application for a pemit, the moratorium put in place by the passage of City Council Motion M-09-372 does not apply to the permit issued to AHEPA.
Id. (Emphasis supplied).
The present case differs materially from Asaro in that no permit has been issued to Moreteo. Under these circumstances, applying the second moratorium ordinance and the zoning amendment ordinance to Moretco’s pending permit application does not offend due process or deprive Moreteo of any vested right. The trial court did not abuse its discretion by declining to enjoin the application of the ordinances on this basis.

Ill Abuse of Power

Moretco’s final argument is that it is entitled to a preliminary injunction because the passage of the ordinances were improper, arbitrary and capricious actions of the Council motivated by the racial bias of Councilman Hinkley, in whose district the property is located. The trial court found that Moreteo failed to make a prima facie showing that the mere passage of the ordinances was unlawful because it was solely motivated by racial bias. In its Reasons for Judgment, the trial court also noted that insomuch as Moreteo was claiming that the ordinances would be unconstitutional in their application, that claim was premature because Moreteo had not yet submitted its permit application for approval by the Council as required by the ordinances. In view of the record, we find no abuse of discretion in the trial court’s conclusion.[5]
|14Zoning is a legislative function, and Louisiana law affords local governing bodies, such as the Plaquemines Parish Council, the authority to amend, supplement, change, modify or repeal existing zoning ordinances. See La. R.S. 33:106; Palermo, 561 So.2d at 491. There is a presumption of validity attached to all zoning ordinances, and the burden of proving such an ordinance to be invalid lies with the challenger. Id. at 490. The Louisiana Supreme Court has described this burden as “extraordinary.” Id. Here, Moreteo had the burden to establish that the challenged ordinances have no real or substantial relationship to the general welfare of the Plaquemines Parish community. Id. The Louisiana Supreme Court set forth the scope of judicial review of zoning decisions as follows:
It is not necessary, for the validity of the ordinance in question, that we should deem the ordinance justified by considerations of public health, safety, comfort, or the general welfare. It is sufficient that the municipal council could reasonably have had such considerations in mind. If such considerations could have justified the ordinances, we must assume that they did justify them.
Palermo, 561 So.2d at 491 (quoting State ex rel. Civello v. City of New Orleans, 154 La. 271, 282, 97 So. 440, 443-44 (1923)). The Court went on to state:
A challenge to a zoning decision in Louisiana is a de novo proceeding in which *295 the issue is whether the result of the legislation is arbitrary and capricious, and therefore a taking of property without due process of law. Hernandez v. City of Lafayette, supra [399 So.2d 1179 (La.App. 3 Cir.1981) ]; Westside Lumber & Supply v. Parish of Jefferson, 357 So.2d 1384 (La.App. 4 Cir.1978). Whether an ordinance bears the requisite relationship to the health, safety and welfare of the public is a factual question which must be determined from the evidence in the record. If it appears appropriate and well founded concerns for the public could have been the motivation for the zoning ordinance, it will be upheld.
Id. at 492 (footnote omitted).
| lsReviewing the record before us according to the standard set forth above, we do not find that Moreteo presented sufficient evidence at the hearing to show that it will prevail on the merits in proving that the challenged ordinances could not have been motivated by any legitimate concern for the welfare of Plaquemines Parish citizens.
Jeffrey Moore of Moreteo testified that he and other Moreteo representatives met with certain parish officials, including Councilman Hinkley, on March 17, 2011 in an attempt to settle the issues that became the basis of the instant lawsuit. According to Mr. Moore, at this meeting Councilman Hinkley expressed concern about allowing Moretco’s planned development because it included a Walmart. When Mr. Moore asked Councilman Hinkley why he did not like Walmart, the Councilman responded “off the record” by saying he did not “want those people from Behrman Highway” coming into Plaquemines Parish. Mr. Moore testified that he understood the comment to mean that Councilman Hink-ley did not want African American shoppers because in Mr. Moore’s own experience, eighty to ninety percent of those who shopped at the current Walmart on Behr-man Highway in Orleans Parish were African Americans.
Plaquemines Parish President Billy Nungesser testified that in his opinion, the moratorium “sent the wrong message” to developers, and unfairly targeted Moreteo by “changing the rules in the middle of the ... game.” He also testified that he remembered Councilman Hinkley at the March 17th meeting having objected to Walmart because it might bring in people from outside the parish. In addition, Mr. Nungesser remembered that Councilman Hinkley had mentioned Behrman Highway. However, Mr. Nungesser also recalled Councilman Hinkley |1fihaving expressed other concerns about Walmart, such as its size and the traffic associated with it.
The testimony of two other participants in the March 17, 2011 meeting directly contradicted that of Mr. Moore with regard to Councilman Hinkle/s comments. Francis Jay Lobrano, a lawyer who had assisted the Council in drafting the ordinances, testified that Councilman Hinkley did not make any racist remarks regarding Walmart or people coming over from Orleans Parish to shop there. Mr, Lobrano testified that Councilman Hinkley was not opposed to Walmart itself but rather to the size of this particular proposed Walmart. Mr. Lobrano’s testimony was corroborated by that of Stan Metcalf, the Director of Economic Development and Tourism for Plaquemines Parish, who also stated that Councilman Hinkley did not make a racist comment, and that the Councilman expressed opposition to Walmart because of its size.
In addition, the video recording of the January 27, 2011 Council meeting admitted into evidence further belies Moretco’s argument regarding the reason for Council *296 man Hinkley’s opposition to Walmart. At the January 27th meeting, Councilman Hinkley was asked by an audience member whether the passage of the second moratorium ordinance “would kill the Walmart project.” He responded by saying that the ordinance would not necessarily kill the project, but would require that the developer’s plans be presented to the Council so that the Council could consider whether the plans were conducive to the needs of the parish in that location, particularly with regard to drainage and traffic issues.
Given the disputed testimony, the trial court found insufficient evidence to indicate that the second moratorium ordinance or the zoning amendment ordinance was motivated by racial bias or discrimination rather than by legitimate concerns |17for parish welfare. We must defer to the trial court’s determinations of credibility in deciding whether that court abused its discretion. As the trial court noted, the evidence demonstrated the existence of other, legitimate considerations that could have prompted the passage of these ordinances, such as potential traffic and drainage problems caused by larger developments, the opposition of surrounding homeowners, and the potential harm to smaller businesses. The trial court also noted that there was presently no development in the parish comparable in size to that proposed by Moreteo, another factor that supports the existence of a legitimate basis, that is — concerns related to size — for adopting the ordinances. The trial court therefore concluded that Moreteo had failed to meet its burden of showing that it would prevail at trial in proving the ordinances to be unconstitutionally arbitrary and capricious or an abuse of the Council’s power.
On appeal, Moreteo argues strenuously that President Nungesser’s testimony was sufficient to make out a prima facie case that the ordinances targeted Moretco’s development and were passed solely to kill the Walmart project for discriminatory reasons. However, because President Nungesser has no authority over zoning decisions, which are solely the function of the Council, his opinions regarding the Council’s motivation for passing the ordinances are irrelevant. President Nunges-ser testified as a fact witness, not an expert. His opinion that the Council had unfairly “changed the rules of the game” is not supported by the evidence, which demonstrates that the provisions of the first and second moratoriums are virtually identical. Moreover, his testimony, like that of any other witness, is subject to the trial court’s assessment of credibility.
1^Moreteo also argues that the trial court committed legal error by failing to apply an adverse inference to the Council’s failure to call Councilman Hinkley as a witness. The Louisiana Supreme Court has stated:
An adverse presumption exists when a party having control of a favorable witness fails to call him or her to testify, even though the presumption is rebutta-ble and is tempered by the fact that a party need only put on enough evidence to prove the case.
Driscoll v. Stucker, 2004-589, pp. 18-19 (La.1/19/05), 893 So.2d 32, 47 (citation omitted).
Whether to apply such an inference is fully within the discretion of the trial court. Roth v. New Hotel Monteleone, LLC, 2007-0549, p. 6 (La.App. 4 Cir. 1/30/08), 978 So.2d 1008, 1012. Louisiana jurisprudence has held that the trial court’s failure to apply the negative inference is not an abuse of discretion under any one of these circumstances: where the *297 witness’s testimony would be cumulative;[6] where the party seeking to avail itself of the negative inference has the burden of proof on the issue that would be addressed by the witness’s testimony;[7] and where the witness is equally available to the opposing party.[8] As all of these circumstances are present here, and any one would have been sufficient to justify the trial court’s refusal to apply the presumption, we cannot say that the court’s failure to do so was an abuse of discretion.
Finally, Moreteo supports its argument that the passage of the ordinances was an arbitrary and capricious abuse of power by asserting that this case is analogous to Berry v. Volunteers of America, Inc., 10-832 (La.App. 5 Cir. 4/26/11), 64 So.3d 347. We disagree. In Berry, property owners who had signed |19an agreement to sell a parcel of their property to the Volunteers of America for the construction of a housing complex for elderly, low-income individuals sued the Jefferson Parish Council after it changed the zoning on that parcel from commercial to residential, thus precluding the housing complex. The property owners claimed that the ordinances accomplishing the rezoning were arbitrary and capricious, were an unconstitutional taking of their property without due process of law, and were improperly motivated by the Jefferson Parish Council’s desire to keep the elderly poor from living in Jefferson Parish. The Jefferson Parish Council filed a motion for summary judgment asserting that all actions taken by the Parish with regard to the plaintiffs’ property were proper exercises of the Parish’s police power. The trial court granted summary judgment and dismissed the plaintiffs’ case. The Fifth Circuit reversed, holding that there were genuine issues of fact that ■ precluded summary judgment. The facts cited by the appellate court included evidence submitted by the plaintiffs showing that: (1) the ordinances had been submitted and the rezoning accomplished without the usual advertisement or notice, and (2) the particular Councilman who had introduced the ordinances had on various occasions made public remarks indicating he was opposed to the housing complex because it would invite “poor New Orleanians” into Jefferson Parish and would attract occupants who were “ignorant or lazy.” 10-832 at pp. 10-11, 64 So.3d at 352-53.
Moretco’s reliance upon Berry is misplaced. Upon de novo review, the Berry court found there were material issues of fact that precluded summary judgment and entitled the plaintiffs to a trial of their claims. Unlike in Berry, here Moretco’s request for a preliminary injunction was fully tried on the merits and the trial court’s decision is reviewed by us under an abuse of discretion standard. UpMoreover, in Berry the plaintiffs’ property had been rezoned to a classification that did not permit the housing development. By contrast, here the zoning classification of the land which Moreteo seeks to develop has not changed, and the no action has yet been taken by the Council regarding the proposed development except to require that Moreteo submit its plans to the Council for approval, which Moreteo has not yet done. Because of these key factual distinctions, we do not find that Berry lends any support to Moretco’s argument. We *298 therefore reject Moretco’s contention that the trial court abused its discretion by declining to issue a preliminary injunction on the basis that the passage of the challenged ordinances was an unconstitutional abuse of the Council’s power.
CONCLUSION
Because Moreteo failed to meet its burden of proving that it is entitled to a preliminary injunction or that it will likely prevail at trial in seeking a permanent injunction, we conclude that the trial court did not abuse its discretion.[9]
AFFIRMED
BONIN, J., dissents with reasons.

. There is a dispute among the parties concerning the nature of this application. Mor-eteo maintains it was an application for a permit as to the entire shopping center, or alternatively, as to the Walmart building alone. The Council presented testimony at trial to show that a single permit application for the entire development would be improper because Moreteo would be required submit an application and obtain a permit for each building to be constructed on the site. It is undisputed that Moreteo subsequently submitted applications for permits for several ancillary buildings.

. The ordinance was originally introduced on by Councilman Hinkley on January 13, 2011, and was later amended to set January 1, 2011 as its effective date. It was adopted as amended on January 27, 2011.

. This included the district represented by Councilman Hinkley, which is where the subject property is located.

. In Asaro, AHEPA applied for a building permit on September 9, 2008; the permit was issued on March 13, 2009; AHEPA submitted revised plans on May 19, 2009; and the moratorium was enacted on July 23, 2009.

. The allegations of racial bias and discrimination raised in this appeal, if true, are serious. The Appellants raise genuine issues of concern in referencing Councilman Hinkley's remarks. The record does not demonstrate racism on the face of these ordinances or that racial bias was the sole motivation for their passage. Whether the ordinances may be dis-criminatorily applied to Moreteo in the future is not before us because Moreteo has not yet applied for a permit under the ordinances.

. See Wilson v. U.S. Fire and Casualty Company, 593 So.2d 695, 700 (La.App. 4th Cir.1992).

. See Francis v. Francis, 2007-1622, p. 4 (La.App. 3 Cir. 4/30/08), 981 So.2d 920, 922.

. See Stewart v. Great Atlantic and Pacific Tea Company, 94-1592, p. 4 (La.App. 4 Cir. 3/16/95), 657 So.2d 1327, 1329-30.

. We also find that Moreteo failed to meet the third prong of its burden of proof by showing that it would suffer irreparable harm unless the preliminary injunction was issued. On appeal, Moreteo again suggests that it does not have to prove irreparable harm because the Council’s actions were unlawful. See Asaro v. City of New Orleans, supra. For the reasons stated herein, we find that the Council’s actions were not unlawful.