665 So.2d 1303 (1995)
Michael HELWICK, as Trustee of the Gertrude and Joseph Helwick Grandchildren's Trust, Michael L. Helwick, as Trustee for the Michael L. Helwick Children's Trust and Michael L. Helwick, as Trustee of the Stephen A. Helwick Children's Trust
v.
MONTGOMERY VENTURES LTD., L.C. Montgomery, Jr., and Hydrodyne Environmental, Inc.
No. 95-CA-0765.
Court of Appeal of Louisiana, Fourth Circuit.
December 14, 1995.
Writ Denied March 15, 1996.
*1304 Demartini, LeBlanc, D'Aquila & Volk, Jerome M. Volk, Jr., Andrea M. Spencer, Kenner, for Plaintiffs/Appellants.
Carver, Darden, Koretzky, Tessier, Finn, Blossman & Areaux, William T. Finn, David L. Browne, New Orleans, for Defendants/Appellees.
Before SCHOTT, C.J., and PLOTKIN and MURRAY, JJ.
SCHOTT, Chief Judge.
This is a suit by purchasers against buyer for the rescission of the sale of immovable property or for a reduction of the purchase price because of defects which were undisclosed by the defendants. The trial court dismissed the suit on a motion for summary judgment and plaintiffs have appealed. The issue is whether there are issues of material fact which preclude a summary judgment enforcing a waiver against plaintiffs with respect to the defects they discovered subsequent to the sale.
On March 9, 1990, plaintiffs, as purchasers, and defendant, Montgomery Ventures, Ltd., as seller, entered into an agreement to purchase and sell the property at 6301 South Claiborne Avenue. This property had been used in the past for a gasoline service station and most recently as a restaurant. The agreement provided that the property was being sold in "AS IS" condition and that purchasers assumed the obligation for removal of underground gasoline tanks on the site. The sale was to be passed by April 7, 1990.
After signing the agreement to purchase, plaintiffs employed Hydrodyne Environmental, Inc. to test and survey the property for the presence of environmental problems. They located tank and grease trap covers and contaminated soil in these areas. Plaintiffs received this report on April 3, 1990.
On April 7 the parties signed an agreement extending the deadline for the act of sale to July 17, 1990. In this agreement the seller agreed "to use his best efforts" to remedy the contamination problem and to remove the four tanks known to be on the property at a cost to purchaser of no more than $15,000. The agreement provided for its cancellation if the tank removal and cleanup would cost more than $15,000. The four tanks were removed and the act of sale was passed on June 29.
In September 1993 purchasers began construction of an office building on the property. Their demolition contractor demolished a concrete slab which had been laid over an older slab and discovered the valve cover for another underground tank. Eventually two more tanks were found on the property and the three tanks were removed at a cost to plaintiffs of $17,893.
Plaintiffs filed suit against Montgomery, Ventures, Ltd., the seller, as well as L.C. Montgomery, Jr., individually, seeking rescission of the sale or a judgment for the $17,893. Plaintiffs alleged that Montgomery who had conducted the negotiations leading up to the sale knew about the additional underground tanks, but did not disclose them. They further alleged that Montgomery misrepresented *1305 there were no other underground tanks, and they entered into the sale relying on these misrepresentations.
Defendants' motion for summary judgment was based upon affidavits and the documents which were generated between the parties. Montgomery's affidavit provided the following facts. In July 1987 Montgomery Ventures purchased the property which was being used as a gasoline service station; Montgomery Ventures leased the property to others who operated a restaurant there until it burned down in 1990 when the property was listed for sale; the agreement to purchase and sell with plaintiffs designated the property on an "AS IS" basis and all negotiations with respect to Hydrodyne's location and removal of the four known tanks were conducted with the understanding that the property would be sold in an "AS IS" condition. The act of sale contained the following stipulation:
The herein property is conveyed "AS IS" with no warranty expressed or implied as to redhibitory defects in the premises ... Purchaser acknowledges that seller makes no covenants, warranties, guaranties, or representations, express or implied, pertaining to the condition of the improvements or the fitness thereof for any purpose. Purchaser waives any present or future rights in the nature of redhibition, quanti minoris and/or concealment of [sic] any other theory of law which might create a cause of action by Purchaser against Seller based on any type of defect in this property.
Montgomery further averred that he had no knowledge of the additional tanks under the slab and that the plaintiffs had every opportunity to inspect the property before they took title.
In another affidavit, William H. Blanke stated that his company was hired by Montgomery Ventures in 1987 to level the slab on the property; in the course of his work he did not cover any openings over underground tanks and he had no knowledge that there were any tanks there.
In a third affidavit, R. Alan Bartlett, a licensed realtor, stated that he acted as agent for Montgomery Ventures in connection with the sale; that all negotiations with plaintiffs were with the understanding that the property would be sold in an "AS IS" condition; that he had no knowledge of the additional tanks, Montgomery never mentioned to him that there were any under the slab and to the best of his knowledge Montgomery didn't know about them.
In opposition to the motion, plaintiffs filed an affidavit by the demolition contractor they had hired. He stated that only after removing the top slab did he find the valve cover over the tank and that it was impossible to see the cover without removing the slab.
Plaintiffs also filed an affidavit of Michael Helwick in which he stated: His father entered into the agreement to purchase the property and they had the four known tanks removed on May 15 and 16, 1990. At all times Montgomery professed that there were tanks on the property which tanks, under the extension agreement, he was supposed to remove. They were not all removed and he "had to have known of all tanks because his construction activities in 1987, or prior therefor, covered [the tank] valve covers." At all times Montgomery professed knowledge of the construction and condition of the property gained from his ownership and leasing of and construction on the property. He demonstrated familiarity with underground tanks and the environmental requirements in connection with their closure and removal.
In granting the motion for summary judgment the trial judge was obviously convinced that there was no genuine issue as to material fact, and that defendants were entitled to judgment as a matter of law. LSA-C.C.P. art. 966. In our review of this judgment we must consider 1) whether there are any issues of fact created by the opposing affidavits filed by plaintiffs and, if so, 2) whether these factual issues are material so as to preclude summary judgment as a matter of law.
Montgomery stated in his affidavit that he had no knowledge of the additional tanks on the property after the first four were discovered and removed. Not surprisingly, plaintiffs' affidavits do not contain any *1306 direct evidence that Montgomery had such knowledge but they do contain circumstantial evidence that might support an inference that he must have known about the additional tanks. A summary judgment is rarely appropriate for a determination based upon subjective facts such as knowledge. Roberts v. Orpheum Corp., 630 So.2d 914, 916 (La. App. 4th Cir.1993); McKenzie v. Webster Parish School Bd., 609 So.2d 1028, 1031 (La. App. 2 Cir.1992). One reason for this rule is that subjective facts call for credibility evaluations and the weighing of testimony and summary judgment is not warranted for such determinations. Jarrell v. Carter, 632 So.2d 321, 325 (La.App. 1 Cir.1993), writ denied 637 So.2d 467 (La.1994). Thus, we conclude that there was a genuine issue of fact created by the opposing affidavits, to wit, Montgomery's knowledge of the additional tanks when he conveyed title on behalf of the corporation to plaintiffs. The next question is whether his knowledge, if any, was a material fact as a matter of law.
The waiver of warranty contained in the act of sale could not be broader. It specifically acknowledged that Montgomery had made no representations and specifically waived any rights in the nature of concealment. The negotiating parties were sophisticated business men with equal bargaining power. Plaintiffs' attorney drew up the act of sale and wrote the waiver language. Arguably, plaintiffs' signature on the document was no mere ornament, they were bound by their agreement, and, regardless of what had taken place before they signed the act, this final written instrument was the law between the parties.
On the other hand, C.C. art. 2548 as written prior to its revision by Act 841 of 1993, eff. January 1, 1995, provided that the renunciation of warranty, made by the buyer, is not obligatory, where there has been fraud on the part of the seller. C.C. Art. 1953 defines fraud as follows:
Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction.
Fraud is more broadly defined in redhibition than it appears from Civil Code article 1953. Derogations of the implied warranty against redhibitory defects must be express, consented to by both parties, made in good faith by the seller, and not contrary to public policy. Mack E. Barham, Redhibition: A Comparative Comment, 49 Tul. L.Rev. 376 (1975). A seller with knowledge of a redhibitory defect who, rather than informing the buyer of the defect, opts to obtain a waiver of the warranty implied by law, commits fraud, which vitiates the waiver because it is not made in good faith. Macarty v. Bagnieres, 1 Mart. (o.s.) 149, 151 (1810).
Applying these legal principles to the facts before us, if Montgomery had knowledge of the additional tanks a trier of fact could conclude that his failure to disclose this to plaintiffs constituted fraud and their waiver of warranty did not deprive them of the right to pursue this redhibitory action.
In pleading fraud, the circumstances constituting fraud shall be alleged with particularity, but knowledge of a person may be alleged generally. C.C.P. art. 856. Plaintiffs' petition meets this test. They say because of Montgomery's ownership and use of the property he knew or had to know of the defects and failed to disclose them; they specifically allege that Montgomery "misrepresented that there were no other underground storage tanks" and they relied upon his "misrepresentations" when they took title. We are aware that the word "fraud" is not used in plaintiffs' petition, but art. 856 does not mandate the use of that word in the petition. Layne v. Schroeder, 399 So.2d 1262, 1265 (La.App. 4th Cir.1981), writ denied, 405 So.2d 531 (La.1981).
Nothing in this opinion should be construed as a finding or even a suggestion of fraud or bad faith on Montgomery's part. The only issue is whether plaintiffs suit was properly dismissed on a motion for summary judgment. Summary judgment procedure should be used cautiously and sparingly and any reasonable doubt should be resolved against granting the motion and in favor of a trial on the merits of the case. We have concluded that the summary judgment in *1307 favor of Montgomery Ventures, Ltd. was erroneously granted by the trial court.
The individual defendant Montgomery argues that he would have no personal liability even if the summary judgment in favor of Montgomery Venture is reversed. He contends he was at all times acting in the corporation's behalf and cannot be sued personally for acts he committed as an agent of the corporation. There is an exception to this general rule in the case of fraud. R.S. 12:95; Dutton & Vaughan, Inc. v. Spurney, 600 So.2d 693, 697 (La.App. 4th Cir.1992), writ denied, 601 So.2d 663 (La.1992). Having decided that plaintiffs may prevail against the corporation on the basis of fraud and that Montgomery's actions might have constituted such fraud the summary judgment in his favor was erroneously granted.
Accordingly, the summary judgment in favor of defendants is reversed and set aside and the case is remanded to the trial court. All costs of this appeal are assessed against defendants. The other costs shall await the outcome of the case.
REVERSED AND REMANDED.