JUDE G. GRAVOIS, Judge.
| ¡^Plaintiffs, Mr. and Mrs. Richard Berry (“the Berrys”), appeal a summary judgment granted in favor of defendant, the Parish of Jefferson (“the Parish”), dismissing their claim for damages and other relief stemming from the alleged arbitrary and capricious re-zoning of their property by the Parish, as well as the imposition of a building moratorium by the Parish.
After thorough consideration of the record, for the following reasons, we reverse the trial court’s grant of summary judgment herein and remand for further proceedings.

FACTS AND PROCEDURAL BACKGROUND

The Berrys own two contiguous parcels of property, containing a total of 4.4 acres, known as Lot 2 of Block 15 and Lot 2 of Block 16 of Elmwood Subdivision, Section “D”, on Behrman Highway on the west bank of Jefferson Parish (“the |aBerry property”). Volunteers of America, Inc. (“the VOA”) approached the Berrys about purchasing their property for development of a high density, multi-unit housing facility for the elderly. On October 13, 2006, the Berrys and the VOA entered into a purchase agreement for the property. At the time the purchase agreement was entered into, and for many years prior thereto, the Berry property was zoned as Multiple Use Corridor District (“MUCD”), which allowed for mixed commercial use of the property. This zoning designation was consistent with the VOA’s anticipated use of the property. Pursuant to the purchase agreement, the Berrys permitted the VOA to have access to their property to initiate a number of actions with respect to its proposed development on the property. The VOA contacted the Parish Planning Department to ascertain the suitability of the land for its anticipated project. It also proceeded to prepare a site plan for the project as required by the Parish Planning Department. In October of 2006, the Parish Planning Department issued two letters to the Louisiana Housing Finance Agency, which was involved with the financing of this project for the VOA, confirming that the Berry property was properly zoned (MUCD) for the VOA’s proposed development.
As the VOA proceeded with these initial actions for its proposed project, on February 7, 2007 the Parish Council adopted a resolution requesting the Parish’s legislative delegation “to introduce, support and endeavor to have enacted the appropriate legislation relative to requiring the Louisiana Housing Finance Authority to obtain approval of the local governing authority prior to the disbursement of tax credits in either the incorporated municipalities in Jefferson Parish or in the unincorporated areas of Jefferson Parish.” Further, on March 28, 2007, the Parish Council adopted a resolution calling for the implementation of a zoning and land use area study (“the study”) of “those properties generally 14bounded by Behrman Highway, Peter Street, Industry Canal and Oakwood Canal; with the intent of reclassifying the properties in these areas from their existing zoning and Future Land Use Map categories to R-1B Suburban Residential District and the most appropriate Future Land Use Map categories.” This resolution specifically ratified a similar resolution adopted by the Parish Council on January 10, 2007.
The study area encompassed 23.67 acres and included the Berry property. Pursuant to the Parish Code, a moratorium was imposed for up to one year on the issuance of building permits in the area covered by *349 the study, effectively halting the VOA project. The study eventually concluded with the Parish Council adopting an ordinance on December 12, 2007 changing the zoning applicable to the Berry property from MUCD to C-l (Neighborhood Commercial District) for the front portion of the Berry property along Behrman Highway, and to R-1A (Single-Family Residential) for the remaining rear portion of the Berry property. These zoning changes were in part consistent with the Parish’s 2003 Comprehensive Land Use Plan for the area encompassing the Berry property. These zoning changes were, however, inconsistent with the VOA’s planned use of the property, effectively killing the project.
The Berrys filed two separate suits concerning this matter. In their first suit (No. 641-845), filed on February 21, 2007, the Berrys sought to enforce their purchase agreement with the VOA (and its alleged assignee, Forest Towers II, Limited Partnership), and to enjoin the Parish from using the moratorium imposed in conjunction with the study to prevent the issuance of a building permit for the Berry property. After the trial court sustained an exception of prematurity filed by the Parish, this Court in an earlier appeal reversed the ruling of the trial court on the exception, thereby allowing the Berrys to proceed with their suit. (See Berry v. Volunteers of America, Inc., et al, No. 08-184 (La.App. 5 Cir. 9/16/08), 996 So.2d 299.) After the Parish re-zoned their property, as set forth above, on January 7, 2008 the Berrys filed a second suit against the Parish (No. 654-717), challenging the moratorium and re-zoning of their property as being violative of their constitutional rights under their right to contract, as amounting to a taking of their property without just compensation, and as being violative of the Louisiana Constitution’s prohibition against age discrimination. The Berrys also claimed damages resulting from the Parish’s said actions. After these suits were consolidated, the Parish filed a Motion for Summary Judgment, which the trial court granted. The Berrys have timely appealed the trial court’s grant of summary judgment against them herein.

STANDARD OF REVIEW AND APPLICABLE LAW

Summary judgments are reviewed on appeal de novo, with the appellate court using the same criteria that govern the trial court’s determination of whether summary judgment is appropriate. Smith v. Our Lady of the Lake Hospital, Inc., 93-2512 (La.7/5/94), 639 So.2d 730, 750. The summary judgment procedure is designed to secure the just, speedy and inexpensive determination of every action. The procedure is favored and shall be construed to accomplish these ends.
A motion for summary judgment should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B). The initial burden of proof is with the mover to show that no genuine issue of material fact exists. If the moving party will not bear the burden of proof at trial, the moving party must only point out that there is an absence of factual support for one or | (¡more elements essential to the adverse party’s claim, action, or defense. The non-moving party must then produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. If the non-moving party fails to do so, there is no genuine issue of material fact and summary judgment should be granted. LSA-C.C.P. art. 966(C)(2); Callis v. Jefferson Parish Hosp. Service, Dist. *350 # 1, 07-680, pp. 4-5 (La.App. 5 Cir. 12/27/07), 975 So.2d 641, 648. Whether a particular fact is material can be seen only in light of the substantive law applicable to the case. Hubbard, v. Jefferson Parish Parks and Recreation, 10-24 (La.App. 5 Cir. 5/25/10), 40 So.3d 1106, 1110.
Even though summary judgment procedure is favored, it is not a substitute for trial and is rarely appropriate for judicial determination of subjective facts such as motive, intent, good faith or knowledge. Penalber v. Blount, 550 So.2d 577 (La.1989); Greer v. Dresser Indus. Inc., 98-129 (La.App. 3 Cir. 7/1/98), 715 So.2d 1235, writ denied, 98-2094 (La.11/6/98), 728 So.2d 867; Tucker v. Northeast Louisiana Tree Service, 27,768 (La.App. 2 Cir. 12/6/95), 665 So.2d 672, writ denied, 96-63 (La.3/8/96), 669 So.2d 404. Subjective facts call for credibility evaluations and the weighing of testimony and summary judgment is inappropriate for such determinations. Greer, 715 So.2d 1235; Helwick v. Montgomery Ventures Ltd., 95-765 (La.App. 4 Cir. 12/14/95), 665 So.2d 1303, writ denied, 96-175 (La.3/15/96), 669 So.2d 424.
In determining whether an issue is genuine for purposes of a summary judgment, courts cannot consider the merits, make credibility determinations, evaluate testimony or weigh evidence. Coto v. J. Ray McDermott, 99-1866 (La.App. 4 Cir. 10/25/00), 772 So.2d 828; Oakley v. Thebault, 96-0937 (La.App. 4 Cir. 11/13/96), 684 So.2d 488, 490; Helwick v. Montgomery Ventures Ltd, 95-0765 (La.App. 4 Cir. 12/14/95), 665 So.2d 1303, 1306.
17The authority to enact zoning regulations flows from the police power of governmental bodies and is valid if it bears a rational relation to the health, safety and welfare of the public. Morton v. Jefferson Parish Council, 419 So.2d 431 (La.1982), citing Folsom Road Civic Ass’n v. Parish of St. Tammany, 407 So.2d 1219 (La.1981), Four States Realty Co., Inc. v. City of Baton Rouge, 309 So.2d 659 (La.1974). Zoning ordinances are presumed to be valid; the party attacking the ordinance bears the burden of proving that it is unconstitutional or that it was applied in an arbitrary and discriminatory manner. Id
Specifically, the exercise of the governing body’s police power regarding zoning regulations will be upheld unless it is shown that there has been an abuse of discretion or excessive use of power, or that the action taken was arbitrary or unreasonable or that it bears no relation to the health, safety, or general welfare of the public. Boudreaux v. Braun Inv., L.L.C., 03-1070 (La.App. 5 Cir. 2/23/04), 869 So.2d 180, 187, citing Palermo Land Co., Inc. v. Planning Commission of Calcasieu Parish, 561 So.2d 482 (La.1990).

ALLEGATIONS AND ARGUMENTS OF THE PARTIES

On appeal, the Berrys argue that the trial court made an improper application of the legal standard on the motion for summary judgment. They argue that their allegations and evidence of bad faith constitute issues of fact that preclude summary judgment. They contend that ad hoc zoning is an improper use of the police power, and that substantive due process violations do not require proof that all use of their property has been denied before damages are awarded.
The Berrys have asserted that the zoning in place at the time the purchase agreement with the VOA was executed was consistent with and allowed for the VOA’s intended elderly housing development. They also have alleged that upon | ¡¿earning of the purchase agreement with the VOA, representatives of the Parish (specifically, a certain Parish councilman), *351 with the express intention of blocking the elderly housing development, called for the implementation of the zoning study, under the authority of Section 40-880 of the Jefferson Parish Code of Ordinances, to reclassify the Berry property as “single family residential.” As noted above, such a study had the practical effect of prohibiting the issuance of any building permits in connection with this property for a period of up to twelve months. The Berrys argued that the study rendered the sale to the VOA impossible, and further was initiated in bad faith and solely for the purpose of re-zoning the property with the object of denying the contemplated VOA development. The Berrys have asserted that the Parish’s actions in making the study request and in implementing the moratorium were arbitrary and capricious and in violation of their vested rights as property owners.
The Parish’s Motion for Summary Judgment argued that all actions taken by the Parish regarding the Berry property were “proper exercises of the Parish’s police power as granted by the Louisiana Constitution” and therefore the Parish was entitled to judgment as a matter of law. The Parish contended that at the time of the adoption of the Parish Comprehensive Land Use Plan in 2008, the Berry property was zoned Mixed Use Corridor District, and that the Comprehensive Land Use Plan designated the future use of the Berry property for low to medium density residential developments. Because the VOA’s proposed use of the property was permitted in a MUCD zoning district but was inconsistent with the use provided by the Parish’s 2003 Comprehensive Land Use Plan, the Parish Council acted properly and reasonably in adopting the resolution calling for the study, during which the moratorium on the issuance of building permits for a period of up to twelve (12) months was properly implemented.
|9The Parish asserted in its Motion that the action of the council calling for the study was consistent with the requirements of the Parish Comprehensive Land Use Ordinance, which requires that all related parish resolutions, ordinances and regulations be consistent with the uses set forth in the plan. Accordingly, the Parish argued, calling for the study was merely the Parish Council exercising its zoning powers granted by the Louisiana Constitution, and as such, the study could not be called a taking or an abuse of power.
The Parish supported its motion with the affidavit of Edwin Durabb, the Director of the Planning Department for the Parish. Attached to his affidavit was the Land Use Study Report addressing the study area in question, and the Ordinance, proposed by Councilman Christopher Roberts, that called for the study, as well as excerpts from the deposition of Councilman Roberts, and other attachments.
In their second suit, the Berrys itemized the following seven specific facts in their Petition for Damages which in their opinion demonstrated the bad faith of Parish officials in this matter, to-wit:
1) The enactment of a resolution by the Jefferson Parish Council requesting that the Louisiana Housing Finance Agency, which issue tax credits for the construction of affordable housing, not issue any such credits without prior permission of the Parish of Jefferson.
2) The enactment of a resolution by the Jefferson Parish Council requesting that the Louisiana State legislature grant the Parish of Jefferson veto power over the issuance of any tax credits issued by the Louisiana Housing Finance Agency concerning developments in the Parish of Jefferson.
3) In October of 2006, Councilman Roberts publicly objected to the con *352 struction of the Volunteers of America project since “You would be having folks in Orleans Parish who lived in public housing complexes enter Jefferson Parish. That’s just not something I’m interested in.”
4) At a public meeting of the Terry-town Civic Association which was to permit representatives of the Volunteers of America to |inpresent the development to residents of the area, Councilman Roberts was first recognized to address the Association. The Councilman addressed the Association in an intentionally pejorative manner to cast a negative light on the development even before the VOA could make its presentation.
5) In October of 2006, Councilman Chris Robert said he did not want a new development in the First District of the Parish of Jefferson if it invited “poor New Orleanians.”
6) Without factual basis, Councilman Chris Roberts publicly criticized VOA’s management of the facility which this new proposed development was designed to replace.
7) On January 10, 2007, contrary to the customary procedure, without prior public advertising of the resolution, and with the purpose of blocking the low income, minority, elderly, and disabled development, Councilman Chris Roberts submitted a resolution to the Jefferson Parish Council to have the Jefferson Parish Planning Department conduct a zoning study to rezone this property, located on a high traffic corridor, to a large lot residential classification.
The Berrys filed a Memorandum in Opposition to the Parish’s Motion for Summary Judgment and attached twenty-four exhibits, including: copies of letters from the Parish Planning Department certifying that the Berry property was zoned MUCD when the purchase agreement between the Berrys and the VOA was executed, which zoning designation allowed for the construction of elderly housing developments on the Berry property; the Report of the land use study on the property in question commissioned by the Parish Council; an affidavit of Mr. Berry; resolutions of the Parish Council requesting and authorizing the study; excerpts from various depositions; and a detailed appraisal report of the Berry property commissioned by the Berrys. The Berrys asserted that their Opposition not only satisfactorily documented the allegations contained in their petition, but also established additional specific issues of fact, as follows:
1) The moratorium was imposed in response to announced development plans by the VOA to construct the development.
2) The zoning proposed by the moratorium and the final zoning imposed by the Parish Council was inconsistent with its prior zoning Inactions in the Behr-man Highway Corridor which called for MUCD zoning for over twenty years.
8)The final zoning imposed by the Parish makes half of the property so expensive to develop as to make the value of the property “speculative.”
4) Councilman Roberts introduced ordinances and zoning studies with the specific intention of blocking the lawful development of the property, after the Parish Planning Department had issued three separate certifications that the property was suited for the development.
5) Three of the ordinances submitted by Councilman Roberts were “from the floor” without prior advertisement or notice. In fact, the sudden notice providing for the moratorium was so obviously submitted in bad faith that the Parish Council, in an effort to provide the gloss *353 of reasonability, advertised and readopted the same ordinance.
6) Councilman Roberts publically opposed the development proposed for plaintiffs’ property by stating that occupants of such developments as “ignorant or lazy.”
7) Councilman Roberts publically stated that he was not interested in Orleans parish residents moving to Jefferson Parish into such a proposed development.
8) The moratorium/zoning proposal of Councilman Roberts was to re-zone the property to R 1-B, a large lot designation found primarily in River Ridge — not on commercial thoroughfares such as Behrman Highway.
9) Councilman Roberts appeared at a public forum denigrating the VOA proposal, before representatives had an opportunity to make their presentations.
10) The re-zoning process was accomplished without any notice to the Berrys, except for a Zoning Change sign posted on the vacant property which the Berrys do not visit regularly. In the past, when a neighboring property wanted to change the appearance of a gate, the Berrys received written notice.
11) Whereas the Parish Council encouraged the development of non-affordable senior citizen housing with tax incentives, street revocations and re-zonings on the east bank of Jefferson Parish, the same Council re-zoned the land, against the property owners’ will, to prevent the construction of affordable housing for seniors on the west bank.
12) The proposed facility complied with the MUCD zoning, before sudden imposition of the moratorium.
| igThe Parish addressed each of these assertions by the Berrys in the Parish’s Reply Memorandum to the Berrys’ Opposition filed in the trial court, arguing that none of these assertions made by the Ber-rys establish bad faith by the Parish under any circumstances.

ANALYSIS AND FINDINGS

Our de novo review of this matter convinces us that the Berrys’ Opposition has alleged facts that sufficiently met the Berrys’ burden under LSA-C.C.P. art. 967 and properly placed at issue whether the Parish Council’s enumerated actions in calling for the land use study and in passing the ordinance re-zoning the Berry property that effectively put an end to the VOA project on the Berry property were an abuse of discretion or excessive use of power, or that such action taken was arbitrary, unreasonable, or in bad faith. We reach this conclusion because on the record before us, we are unable to discern whether the acts of the Parish Council in general, and of Councilman Roberts in particular, were the legitimate exercise of the Parish’s zoning authority or were undertaken with the specific intent to thwart the Berrys’ desire to sell their property to the VOA and the VOA’s desire to proceed with its proposed development. Given that a resolution of these issues involves the determination of the credibility of witnesses and of subjective facts, the matter was not proper for resolution by summary judgment.
Further, the trial judge’s comments in its oral ruling on the merits of the Parish’s Motion for Summary Judgment show that the court was to a certain extent considering the eventual merits of the Berrys’ suit,[1] which the trial court is not | ^allowed *354 to do when considering the merits of a motion for summary judgment. Instead, the trial court should have focused only on whether the Berrys’ Opposition had successfully met their statutory burden under LSA-C.C.P. arts. 966 and 967 to defeat the Parish’s Motion for Summary Judgment. We find that it did.
Both parties cite to Palermo Land Co., Inc. v. Planning Commission of Calcasieu Parish, 561 So.2d 482 (La.1990) in support of their positions. The most pertinent fact of the Palermo case at this procedural juncture is that in that case, the trial court’s finding that the policy jury’s exercise of authority was in good faith was made after a full trial on the merits.

CONCLUSION

For the above reasons, we reverse the trial court’s grant of summary judgment in favor of the Parish of Jefferson. This matter is remanded to the trial court for proceedings consistent with this opinion.

REVERSED

. The trial court commented as follows in his oral ruling granting the Parish's Motion for Summary Judgment: "Alright. I think it's— the parish is right. The Court can't supplement its judgement for — or act in a legislative capacity to supplement its judgement for that *354 of the counsel [sic]. I think that the burden in this case is so high. I assume all the facts that you state are true. I don’t know that that reaches the level of bad faith or arbitrary and capricious.